UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

―――――――――――――――――――――――――――――
KURT SCOTT,
                      Plaintiff,

           -v-

CITY OF NEW YORK, *et al.*,
                      Defendants.
―――――――――――――――――――――――――――――

19-CV-6289 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Two New York City police officers arrested Kurt Scott for driving a car with illegally tinted windows, driving without a valid driver's license, and possessing counterfeit currency. Scott now brings a number of claims arising out of that arrest, under both 42 U.S.C. § 1983 and state law, against the City of New York and the two police officers who arrested him (collectively, "Defendants") for what he alleges was a false arrest. Defendants move for summary judgment; Scott moves for partial summary judgment. For the reasons that follow, Defendants' motion is granted and Scott's motion is denied.

**I.    Background**

The following facts are undisputed unless otherwise noted.

In May 2018, two police officers observed Scott driving a car with tinted passenger rear windows and a tinted rear windshield. (*See* Dkt. No. 68 ¶¶ 7–8.) The officers then effectuated a traffic stop of Scott's car. (*See* Dkt. No. 68 ¶ 9.) The officers asked Scott for his license and he produced only a learner's permit. (*See* Dkt. No. 68 ¶ 11.) Scott did not possess a valid driver's license in May 2018. (*See* Dkt. No. 68 ¶ 5.) A few minutes later, after two more police officers arrived on the scene, the officers asked Scott and a passenger to step out of the car. (*See* Dkt.

1

No. 68 ¶¶ 12, 14.)  Scott and the passenger exited the car and walked to the back of the car.  (*See* Dkt. No. 68 ¶ 14.)

While Scott and his passenger stood near the back of the car, the police officers present searched his car.  (*See* Dkt. No. 68 ¶ 15.)  The parties dispute whether Scott consented to the search beforehand.  (*See id.*)  From their search, officers found counterfeit currency in Scott's passenger's bag.  (*See* Dkt. No. 68 ¶ 16.)  Officers subsequently arrested Scott for illegally tinted windows, in violation of New York Vehicle and Traffic Law ("V.T.L.") Section 375(12-a), operating a motor vehicle without a valid driver's license, in violation of V.T.L. Section 509(4), and for possessing counterfeit money, in violation of New York Penal Law Sections 170.15(1) and 170.30.  (*See* Dkt. No. 68 ¶ 19.)  Scott was then handcuffed and transported to the Twenty-Third Precinct for processing, where he was placed in a holding cell and his handcuffs were removed.  (*See* Dkt. No. 68 ¶ 20–21.)  Scott was released from custody the following day and was ultimately not charged with any crime resulting from his May 2018 arrest.  (*See* Dkt. No. 68 ¶¶ 20, 26–27.)

This action was filed in July 2019.  (*See* Dkt. No. 1.)  Scott brings the following causes of action against Defendants under 42 U.S.C. § 1983: false arrest, false imprisonment, excessive force, malicious prosecution, failure to intervene, and a municipal liability *Monell* claim.  (*See* Dkt. No. 1 ¶¶ 60–150.)  Scott also brings the same claims — except the excessive force and *Monell* claims — along with assault and battery, intentional infliction of emotional distress, negligent hiring, retention, and supervision claims under New York state law.  (*See* Dkt. No. 1 ¶¶ 60–150.)  Defendants have moved for summary judgment on all claims.  (Dkt. No. 47.)  Scott has cross-moved for partial summary judgment on his federal and state law claims of false arrest

and false imprisonment, his federal *Monell* claim, and his state law claim of assault and battery. (*See* Dkt. No. 61.)

## II. Legal Standard

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if, considering the record as a whole, a rational jury could find in favor of the non-moving party. *See Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).

"On summary judgment, the party bearing the burden of proof at trial must provide evidence on each element of its claim or defense." *Cohen Lans LLP v. Naseman*, No. 14 Civ. 4045, 2017 WL 477775, at *3 (S.D.N.Y. Feb. 3, 2017) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). "If the party with the burden of proof makes the requisite initial showing, the burden shifts to the opposing party to identify specific facts demonstrating a genuine issue for trial, i.e., that reasonable jurors could differ about the evidence." *Clopay Plastic Prods. Co. v. Excelsior Packaging Grp., Inc.*, No. 12 Civ. 5262, 2014 WL 4652548, at *3 (S.D.N.Y. Sept. 18, 2014). The court views all "evidence in the light most favorable to the non-moving party," and summary judgment may be granted only if "no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (internal quotation marks omitted).

## III. Discussion

The Court now considers each of Scott's claims brought under federal law.

### A.     False Arrest and False Imprisonment

Plaintiff's false arrest claim under Section 1983 must be analyzed under the law of the state in which the arrest occurred.  *See Davis v. Rodriguez*, 364 F.3d 424, 433 (2d Cir. 2004). "Under New York law, to prevail on a false arrest claim, a plaintiff must demonstrate that (1) the defendant intentionally confined her, (2) the plaintiff was aware of being confined, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not justified or otherwise privileged." *Rodriguez v. Vill. of Ossining*, 918 F. Supp. 2d 230, 240 (S.D.N.Y. 2013) (citing *Jocks v. Tavernier*, 316 F.3d 128, 134–35 (2d Cir. 2003)).  Here, the parties dispute only the last element — namely, whether there was a justification for Scott's arrest.

An arrest is justified if it is based on probable cause.  *See Rodriguez*, 918 F. Supp. 2d at 240; *see also Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) ("The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest." (internal quotations and citations omitted)).  "Probable cause to arrest exists when the officers have knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007).  This probable cause inquiry is based upon "whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest." *Jaegly v. Couch*, 439 F.3d 149, 153 (2d Cir. 2006).  When determining whether actual probable cause existed, courts "look to the totality of the circumstances" as to what the officers knew at the time of arrest, considering "those facts available to the officer at the time of the arrest and immediately before it.  *See Figueroa v. Mazza*, 825 F.3d 89, 115 (2d Cir. 2016).

Scott's false arrest claim fails for several reasons.  Scott admits that he was driving a car with tinted passenger rear windows and a tinted rear windshield. (*See* Dkt. No. 68 ¶ 7.)  One of

4

the officers who stopped, and later arrested, Scott provided sworn testimony that the officers did so because they believed the car had excessively tinted windows, in violation of V.T.L. § 375(12-a).  (*See* Dkt. No. 68 ¶ 8.)  Scott asserts that the car's windows were lawful and not excessively tinted, noting that the car's windows had passed inspection.  (*See* Dkt. No. 68 ¶ 7.)  But "[a]n officer's reasonable conclusion that a car is in violation of Section 375(12-a)(b) . . . provides probable cause to arrest the driver of the car."  *Djangmah v. Falcione*, No. 08 Civ. 4027, 2013 WL 208914, at *11 (S.D.N.Y. Jan. 18, 2013), *R&R adopted*, 2013 WL 1195261 (S.D.N.Y. Mar. 25, 2013).  The fact that the arresting officers here relied only on their naked-eye perception of the windows, as opposed to somehow testing the windows' tint "to determine if they were, in fact, in violation of the law is immaterial."  *See United States v. Garcia*, 279 F. Supp. 2d 294, 299 (S.D.N.Y. 2003).  At the time of arrest, the windows were tinted, and it was objectively reasonable for the arresting officers to believe the windows were unlawfully tinted.  Scott's arrest for violating V.T.L. § 375(12-a) was therefore justified.

The fact that officers also arrested Scott for driving without a license — a fact he does not contest — is an additional, independent reason why his false arrest claim must fail.  *See Rodriguez*, 918 F. Supp. 2d at 241–42 (holding that an arrest is "privileged and cannot form the basis for a false arrest claim under Section 1983" when officers "had probable cause to arrest Plaintiff for *any* crime" (emphasis added)).  After his car was stopped and the officers asked him for his license, Scott handed the officers only his learner's permit.  (*See* Dkt. No. 68 ¶ 11.)  Scott's failure to provide the officers with a license gave the officers probable cause to arrest him for operating a motor vehicle without a valid license, in violation of V.T.L. § 509(4).  Scott takes issue with the fact that the officers did not investigate whether the passenger in Scott's car had a valid license, which could have rendered Scott's operation of the car lawful.  However, "[o]nce a

police officer has a reasonable basis to believe there is probable cause to arrest, the officer is not required to explore or eliminate every theoretically plausible claim of innocence before making an arrest." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (quoting *Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001)).

The Court thus grants summary judgment in the City's favor and dismisses Scott's false arrest claim.[1]  The Court also dismisses Scott's false imprisonment claim.  *See Posr v. Doherty*, 944 F.2d 91, 96 (2d Cir. 1991) ("In New York, the tort of false arrest is synonymous with that of false imprisonment.").

### B.   Excessive Force

"[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof."  *Graham v. Connor*, 490 U.S. 386, 396 (1989) (citations omitted).  "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."  *Id.* (internal quotation marks omitted).  Civil rights claims under Section 1983 for excessive use of force in connection with an arrest are governed by this objective reasonableness standard of the Fourth Amendment.  *See Esmont v. City of New York*, 371 F. Supp. 2d 202, 214 (E.D.N.Y. 2005) (citing *Graham*, 490 U.S. 386).

When evaluating a plaintiff's claim of excessive force based on his handcuffing incident to arrest, courts "consider evidence that: 1) the handcuffs were unreasonably tight; 2) the defendants ignored the [plaintiff's] pleas that the handcuffs were too tight; and 3) the degree of

---

[1] The Court "does not analyze probable cause for the other . . . charge[] for which [Scott] was arrested . . . because probable cause for any crime is a defense to false arrest."  *Pacicca v. Stead*, 456 F. App'x 9, 11 n.1 (2d Cir. 2011) (citing *Brown v. Kelly*, 609 F.3d 467, 484 (2d Cir.2010)).

injury to the wrists." *Lynch ex rel. Lynch v. City of Mount Vernon*, 567 F. Supp. 2d 459, 468 (S.D.N.Y. 2008) (citing *Esmont*, 371 F. Supp. 2d at 215).

Scott does not allege that any force was used on him beyond the police handcuffing him incident to his arrest. In his deposition, Scott testified that his handcuffs were too tight. (*See* Dkt. No. 68 ¶ 29.) But Scott concedes that he did not alert any officers that his handcuffs were too tight (*see* Dkt. No. 68 ¶ 23) or complain of an injury or request medical attention while in police custody (s*ee* Dkt. No. 68 ¶ 28). Indeed, there is no evidence in the record of Scott suffering any physical injury whatsoever as a result of his arrest. The Court accordingly grants summary judgment to Defendants on the excessive force claim and dismisses the claim.

### C. Malicious Prosecution

Scott's malicious prosecution claim fails because he was never prosecuted. To state a claim for malicious prosecution in New York, a plaintiff must establish, among other elements, "the initiation of a criminal proceeding against plaintiff." *Jocks*, 316 F.3d at 136 (internal quotation marks omitted). For a malicious prosecution claim brought under § 1983, a plaintiff must also show "a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." *Rohman v. N.Y.C. Trans. Auth.*, 215 F.3d 208, 215 (2d Cir. 2000). Following Scott's arrest, he was released from custody and the Manhattan District Attorney's office declined to prosecute him. (*See* Dkt. No. 68 ¶ 26.) There is no evidence of there being any criminal proceeding initiated against Scott as a result of his May 2018 arrest, let alone any post-arraignment deprivation of liberty. Accordingly, this malicious prosecution claim is dismissed as a matter of law.

### D. Malicious Abuse

Scott's malicious abuse claim is based on his arrest, but "the presence of probable cause negates a claim for abuse." *Irish v. City of New York*, No. 09 Civ. 5568, 2010 WL 5065896, at *6 (S.D.N.Y. Dec. 6, 2010) (internal quotation marks omitted) (citing *Sforza v. City of New York*,

7

No. 07 Civ. 6122, 2009 WL 857496, at *17 (S.D.N.Y. Mar. 31, 2009)).  Because there was probable cause for Scott's arrest, his malicious abuse claim is dismissed as a matter of law.

  **E.** **Failure to Intervene**

A failure to intervene claim requires, among other things, that a plaintiff suffered a constitutional violation.  *See Feinberg v. City of New York*, No. 99 Civ. 12127, 2004 WL 1824373, at *4 (S.D.N.Y. Aug. 13, 2004) ("If the Court determines that the officer's conduct did not violate a constitutional right, however, the analysis [for a failure to intervene claim] ends." (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  Since there is no evidence of any underlying constitutional violation that Scott experienced, his failure to intervene claim is dismissed as a matter of law.

  **F.** ***Monell* Claim**

To prevail on a claim of municipal liability, a plaintiff "must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer.  Second, the plaintiff must establish a causal connection — an affirmative link — between the policy and the deprivation of his constitutional rights."  *See Vippolis v. Vill. Of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985) (internal quotation marks omitted).  The policy or practice must be the "moving force [behind] the constitutional violation" that the plaintiff experienced.  *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 694 (1978).

Scott provides no evidence of any municipal policy or custom that caused him to be deprived of his constitutional rights.  As the Court has already explained, the officers' arrest of Scott was constitutional.  Even if the search of Scott's car was unconstitutional, an issue on which the Court reaches no conclusion here, Scott fails to identify how a municipal policy was the moving force behind the search.  Indeed, Scott does not offer any arguments in support of his

*Monell* claim in his memorandum of law opposing Defendants' motion for summary judgment and supporting his cross-motion. (*See* Dkt. No. 62.) The Court thus dismisses his *Monell* claim as a matter of law.

## IV. Conclusion

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED and Scott's cross-motion for partial summary judgment is DENIED.[2]

The Clerk of Court is directed to close the motions at Docket Numbers 47 and 61 and to close this case.

SO ORDERED.

Dated: March 22, 2022
New York, New York

_____
J. PAUL OETKEN
United States District Judge

---

[2] Because each of Scott's federal law claims is without merit, the Court does not consider Scott's state law claims and declines to exercise jurisdiction over them. Accordingly, the state law claims are dismissed without prejudice to refiling in state court. *See* 28 U.S.C. § 1367(c)(3).

9